FILED

SEP 30 2011

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESLIE PATRICE BARNES MARKS, and others similarly situated, | ) CASE NO. 11-CV03851  SBA |
| | ) |
| Plaintiff, | ) RELATED CASES: |
| | ) USBC DELAWARE: 09-50244; 07- |
| vs. | ) 10416 |
| | ) |
| TREVNOR ASKEW, TRA PARTNERS, LLC., | ) 9TH CIR. COURT OF APPEAL CASE |
| GREENTREE SERVICING, LLC, FIDELITY | ) NOS.: 10-16811; 10-16799 AND 10- |
| NATIONAL TITLE COMPANY aka | ) 17811 |
| DEFAULT RESOLUTION NETWORK, | ) |
| OCWEN LOAN SERVICING, LLC, NEW | ) ACSC CASE NOS: RG10545629 AND |
| CENTURY LIQUIDATING TRUST fka NEW | ) RG10546852 |
| CENTURY MORTGAGE CORPORATION dba | ) |
| HOME 123 CORPORATION; ACCESS | ) AMENDED VERIFIED COMPLAINT |
| DIRECT REALTY, INC., AND KYLE CRABB | ) FOR  DAMAGES: ($75,000,000.00) |
| and all persons unknown claiming any legal or | ) |
| equitable right, title estate, lien or interest in the | ) 1.  CIVIL RICO; |
| property described in the complaint adverse to | ) 2.  FRAUDULENT CONVEYANCE; |
| plaintiff's title or any cloud on Plaintiff's title | ) 3.  WRONGFUL FORECLOSURE; |
| thereto and Does 1 through 100 inclusive, | ) 4.  UNLAWFUL EVICTION; |
| | ) 5.  RACIAL DISCRIMINATION, |
| Defendants. | ) 6.  VIOLATION OF AMERICAN |
| | ) WITH DISABILITIES ACT; |
| | ) 7.  REAL ESTATE FRAUD; |
| | ) 8.  VIOLATION OF BUSINESS |
| | ) AND PROFESSIONS CODE |
| | ) SECTION 17200, et seq.; |
| | ) 9.  VIOLATIONS OF THE FAIR |
| | ) CREDIT REPORTING ACT; |
| | ) 10. TRUTH IN LENDING ACT; |
| | ) 11. FRAUD UPON THE COURT; |
| | ) 12. VIOLATIONS OF RESPA; |
| | ) 13. CONSTRUCTIVE FRAUD; |
| | ) 14. FRAUDULENT INDUCEMENT; |
| | ) 15. VIOLATION OF 2932.5; |
| | ) 16. UNCONCIONABILITY, AND |
| | ) 17.  QUIET TITLE |
| | ) |

1        Pursuant to Rule 15 (a) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), Leslie

2    Marks ("Marks" or "Plaintiff") respectfully files this AMENDED Verified Complaint for

3    Damages ($75,000,000.00)  in support thereof Plaintiff states as follows:

4        At issue is title and rightful possession of the Property commonly known as 3099 Suter

5    Street, Oakland, CA 94602 (hereinafter the "Subject Property").  DEFENDANTS, and each of

6    them, have conspired jointly and/or severly to file and record fraudulent documents resulting in

7    the unlawful foreclosure and unlawful eviction of Marks.  Defendant TRA did not have the

8    property authority to perform construction on the property.  Defendant TRA did not obtain the

9    proper permits prior to making repairs and other construction to the property and used

10   undocumented workers to perform certain tasks, thereby substantially reducing the value of the

11   property and clearly attempting to obtain benefit well above the value of the property.

12       The transfer of the property was in violation of the provisions of 2923.5.  A foreclosure

13   sale was based upon fraudulent documents, and therefore is void not voidable.   Marks was

14   NOT in default at the time of the unlawful foreclosure.   Marks owes no sums to any

15   Defendants.  Defendants conducted the unlawful foreclosure sale had no authority to do so.

16   Defendants filed a fraudulent and defective Notice of Default. Marks had no obligation to the

17   any Defendant at the time of the foreclosure. As a result of these acts, Marks and her family

18   have suffered financial devastation and homelessness.

19       This case arises out of Defendants' egregious and ongoing and far reaching fraudulent

20   schemes for improper use of Plaintiff's identity, fraud in the inducement, fraud in the

21   execution, usury, and breaches of contractual and fiduciary obligations as Mortgagee or

22   "Trustee" on the Deed of Trust, "Mortgage Brokers," "Loan Originators," "Loan Seller",

23   Mortgage Aggregator," "Trustee of Pooled Assets", "Trustee or officers of Structured

24   Investment Vehicle", "Investment Banker", "Trustee of Special Purpose Vehicle/ Issuer of

25   Certificates of 'Asset-backed Certificates'", "Seller of 'Asset-Backed' Certificates (shares or

26   bonds)," "Special Servicer" and Trustee, respectively, of certain mortgage loans pooled

27   together in a trust fund. 2. The participants in the securitization scheme described herein have

28

-2-
AMENDED VERIFIED COMPLAINT FOR DAMAGES

1  devised business plans to reap millions of dollars in profits at the expense of Plaintiff and other

2  investors in certain trust funds. 3. In addition to seeking compensatory, consequential and other

3  damages, Plaintiff seeks declaratory relief as to what (if any) party, entity or individual or

4  group thereof is the owner of the promissory note executed at the time of the loan closing, and

5  whether the Deed of Trust (Mortgage) secures any obligation of the Plaintiff, and A Mandatory

6  Injunction requiring reconveyance of the subject property to the Plaintiff or, in the alternative a

7  Final Judgment granting Plaintiff Quiet Title to the Subject Property.

8        Plaintiff is a pro se litigant, and as such see, *Caldwell v Miller*, 790 F. 2d 589, 595 (7th

9  Cir. 1986) "Pro Se litigants are not held to the stringent standards applied to formally trained

10  members of the legal profession, and their pleadings are to be liberally construed."

11

12  **I.**      **INTRODUCTION AND PRELIMINARY STATEMENTS**

13        **A.**      **INTRODUCTION**

14        Plaintiff, Leslie Marks, hereinafter "Marks" or "Plaintiff",  sue the Defendants set forth

15  above for the violations of several Federal and state laws, Civil Rico the Real Estate Settlement

16  Procedures Act ("RESPA"), 12 U.S.C. § 2607 *et seg*. and the implementing Regulation X

17  ("Reg. X"); the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seg*. and the implementing

18  Regulation Z ("Reg. Z"); the Federal Mail Fraud Act, 18 U.S.C § 1341 (the "Mail Fraud Act");

19  the Federal Wire Act, 18 U.S.C. § 1343 (the "Wire Act"); Bank Fraud 18 U.S.C. §§ 1010,

20  1014, 1344 ("Bank Fraud"); the Racketeer Influenced and Corrupt Organizations Act

21  ("RICO"), 18 U.S.C. § 1961 *et seq*.; the Securities Act of 1933 15 U.S.C § 77a *et seq*. (the "33

22  Act"), and Rules promulgated thereunder by the Securities and Exchange Commission

23  ("SEC"); and for violations of several state and federal  and laws. Plaintiff is typically

24  representative of other borrowers that fell prey to the violations outlined and covered by this

25  Complaint.

26        **B.**      **STATEMENT OF THE CASE**

27        1.      In 2006, former New Century employee Tom Chicoine, solicited Marks to

28

1    entice her to become involved in a series of refinancing products for her home.  The final loan

2    product was not the terms upon which the parties agreed.  Marks made one payment of

3    $4,200.00 and when advised by representatives of New Century that the next month's payment

4    would be $4,700.00, Marks immediately filed suit against New Century.  Marks as NOT in

5    default at the time she brought suit against New Century.  Subsequently, New Century filed for

6    protection of the automatic stay in the Delaware Bankruptcy Court to avoid federal prosecution

7    and other crimes alleged by federal agencies, similar to the allegations made by Marks.

8         2.      In 2010 Marks discovered that New Century, in the processing of its fraudulent

9    schemes, satisfied Marks mortgage in 2007.  New Century failed to record any assignments or

10   provide evidence of transfer of the Marks 2006 mortgage to any entity.  In a 2010 Evidentiary

11   Hearing in Delaware, Counsel for New Century stated under oath that New Century has  no

12   evidence of transfer and that Marks should "take the word of an officer of the court" that the

13   transfer was done.  Marks is not aware of nor could she locate any case law supporting that the

14   "word" of an officer of the Court is valid evidence of transfer of real estate in any of the 50

15   States.  Attorney Indelicato and the New Century Liquidating Trustee, Alan Jacobs Under

16   California law, to perfect transfer of mortgage paper as collateral the owner should physically

17   deliver the note to the transferee.  *Bear v. Golden Plan of California Inc.,* 829 F. 2d 705, 709

18   (9th Cir. 1986)  Without physical transfer, the sale of the note could be invalid as a fraudulent

19   conveyance.  See Roger Bernhardt, California Mortgages and Deeds of Trusts, and Foreclosure

20   Litigation § 1.26 (4th ed. 2009).  A Note specifically identifying a party to whom it is payable

21   cannot be transferred unless the Note is *indorsed*.  See Calif. Comm. Code  §§ 3109, 3201,

22   3203, 3204.  Furthermore, It is well established  law in the Ninth Circuit that the assignment of

23   a deed trust does not assign the underlying promissory note and right to be paid, and that

24   security interest is incident of the debt.   Witkin Summary of California Law, Secured

25   Transactions in Real Property § 105 (10th ed).admitted under oath that they have no evidence

26   of transfer of Marks mortgage to any entity.  Attorney Indelicato and Alan Jacobs confirm that

27   Marks has no obligation to New Century and that Marks 2006 mortgage was satisfied in 2007.

28

-4-
AMENDED VERIFIED COMPLAINT FOR DAMAGES

3.      In 2011 Marks discovered that New Century failed to advise her that there was a 2008 blanket Motion for Relief from Stay, which would have allowed Marks to bring her allegations of fraud at that time, in California.  Attached hereto as Exhibit A is a copy of the Hawaii Case where a district court judge ruled against homeowners for NOT taking advantage of the 2008 Blanket relief from stay order.

4.      Attached hereto as Exhibit B is a copy of the 2008 Blanket Relief from Stay Order issued by the Delaware Bankruptcy Court in 2008.

5.      Attached hereto as Exhibit C is a copy of the Order allowing Marks to pursue New Century as to quiet title only.  As a result of these proceedings and the allegations made herein, Marks is alleging this order defective in that Marks may seek monetary damages pursuant to the 2008 Blanket Relief From Stay Order and the fact that no transfer of the mortgage was made to any entity.

6.      Marks has several appeals pending in the state court, including a determination that all orders of the Alameda County Superior Court are VOID as the Court erroneously failed to relate the cases, and stay all proceeding pending the appeals in the 9th Circuit Court of Appeals.  Exhibit F are true and correct copies of the documents upon which the Foreclosure was based.  The referenced loan number upon which the foreclosure is based is NOT a loan to which Marks has ever had any obligation.  Marks did not in default on the loan upon which the foreclosure is based nor had any obligation of any kind to this loan. The named Defendants who conducted the foreclosure and the recorded the defective Notice of Default were not the parties entitled to conduct those transactions.  Marks mortgage was satisfied in 2007.  Marks contends she is the sole lawful owner of the property commonly known as 3099 Suter Street, Oakland, California, hereinafter, the "Subject Property".

7.      From 2007 to 2009, Ocwen claimed to be the owner of Marks note.  There are no assignments recorded evidencing transfer.  In 2010 New Century's Counsel Mark Indelicato stated there was NO evidence of transfer, and Marks should take the "word" of an "officer of the court" that the transfer was done. As such Ocwen had no authority to "transfer" Marks

1    mortgage to Defendant GreenTree or any other entity.

2         8.      Marks filed suit in Federal Court against OCWEN, alleging if Ocwen was the

3    new owner it walked in the shoes of the prior lender and needed to answer to Marks regarding

4    the misrepresentations in her mortgage.   Ocwen presented to the United States District Court,

5    before the Honorable Susan Illston, that Ocwen was a "servicing" company not a lender.

6    Judge Illston agreed that Ocwen was the SERVICER and not the LENDER and dismissed the

7    case with prejudice in favor of Ocwen.   From 2007 through 2009 Ocwen never serviced Marks

8    mortgage in any way.   Marks did not know her mortgage was "satisfied" in 2007 at that time.

9         9.      In 2009 Marks filed for protection of the United States Bankruptcy Court, as

10   foreclosures were rampant and there was no communication whatsoever from Ocwen.   Ocwen

11   then filed a Proof of Claim in the Bankruptcy Court, as Marks' lender.   Marks attempted to

12   bring this to the attention of Judge Tchaikovsky that Ocwen's proof of claim was defective as

13   Ocwen claimed in Federal Court to be the "servicer" and not the "lender" thereby committing

14   fraud upon the Court.   Marks' cries fell upon deaf ears and Ocwen was allowed to transfer its

15   non-existent interest in Marks home to Defendant GreenTree.   This matter is currently under

16   appeal in the 9th Circuit and ripe for decision.

17        10.     Defendant GreenTree then began sending Marks monthly mortgage invoices

18   demanding sums ranging from $0.0 to $2,000,000.00.   GreenTree then recorded a defective,

19   robosigned and fraudulent Notice of Default.    Almost three (3) months later GreenTree

20   recorded a defective Assignment and Substitution of Trustee. These documents were defective

21   because the Notice of Default was recorded before the Assignment.   Defendants cannot claim

22   Default on an obligation before they have a right to the obligation.   Defendant GreenTree then

23   effected an foreclosure sale of Marks home, the subject property based upon these defective

24   documents.    The GreenTree fraudulent Assignment shows a representative of GreenTree

25   signed the Assignment on behalf of "Home 123" not "Ocwen" whom it claimed to obtain the

26   mortgage from in Bankruptcy court.    Furthermore, Home 123 is currently in Active

27   Bankruptcy in Delaware.   In order for the assignment to be valid it would have had to been

28

AMENDED VERIFIED COMPLAINT FOR DAMAGES

1   signed in 2007 BEFORE New Century lost its license to do business in the State of California.

2   Leave of the Bankruptcy court would have also have to be granted for the document to be valid

3   in 2010.  Also the signature of the New Century Liquidating Trustee would have been the

4   signature that represents New Century's interest, not a representative of Defendant GreenTree.

5   Defendants failed to file a proof of claim or show ownership of any kind, Judge Leslie

6   Tchaikovsky granted GreenTree's motion for relief from the Automatic Stay. This matter is

7   currently under appeal in the 9th Circuit.

8       11.     The foreclosing Trustee, Default Resolution Network posted the allegedly

9   defective Notice of Trustee Sale on Marks property.   When Marks contacted Default

10  Resolution Network, she was advised their name is to Fidelity National Title Company.  Marks

11  advised them that the Subject Property  remains in ongoing litigation and there is a lis pendens

12  on the property.   Marks advised them that the Defendant that conducted the foreclosure sale

13  had no authority to do so.  Both Defendants Default Resolution Network and Fidelity National

14  Title Company played phone tag with Marks and ignored her requests and failed to return her

15  calls.

16      12.     On October 20, 2010 the same day of the Trustee's Sale, Trevnor Askew and

17  another man trespassed on Marks property.  The two men had two empty pick-up trucks parked

18  in front of Marks home.  Marks pulled up in her car and observed Mr. Askew attempting to

19  open a window on her front porch.  Marks believes had Mr. Asknew broken a window, they

20  would have stolen Marks personal possessions.  Marks asked who they were and what they

21  were doing.  Trevnor Askew told Marks he purchased her property at a Trustee's Sale.  Marks

22  advised him that that was too bad this property was in ongoing litigation since 2006.  Trevnor

23  Askew then said "There is no lis pendens recorded." Marks advised him that there WAS a lis

24  pendens recorded in 2007 and remained recorded.  The 2007 Lis Pendens remains recorded and

25  is in full force and effect.  A true and correct copy of the 2007 Lis Pendens which remains in

26  full force and effect is attached hereto as Exhibit D.  (Marks remains in ACTIVE litigation in

27  the New Century Bankruptcy matter in Delaware.)  Furthermore, in order for Defendants to

28

AMENDED VERIFIED COMPLAINT FOR DAMAGES

have any right to the Trustee Sale and subsequent foreclosure, the 2007 Lis Pendens had to be EXPUNDGED prior to the unlawful Trustee sale.

13.  On or about October 21, 2010 Trevnor Askew called Marks and stated that he DID find the recorded lis pendens in the Recorder's office.  Trevnor Askew said that his title company forgot to tell him about the lis pendens.  Trevnor Askew said that his title company told him that the court "forgot" to remove the lis pendens.  Trevnor Askew stated that if the bank gave him his money back "We were good."  Marks informed him that her home was NOT his investment and that he needed to seek recovery of his funds from his Title Company that failed to inform him of the recorded lis pendens.  Marks further advised him that the lis pendens had to be expunged prior to the Trustee's sale.  Trevnor Askew began complaining about his "investors" and Marks had no remedy for him other than what she had already told him.

14.  After that Trevnor Askew began a series of harassment and trespassing on Marks Property.  Marks called the police on several different occasions.  Mr. Askew then hired Attorney Eikenberry who continued this path of harassment verbally with Marks on the telephone.  Marks has recently received the certified copy of the police report, and will present same at trial.

15.  Mr. Askew is the sole employee of TRA Partners.  According to records in the Alameda County Recorder's office, TRA Partner's 'acquired' about 68 properties in Oakland.  Marks believes Mr. Askew acquired each and every one of those properties unlawfully by appearing at the property immediately after the Trustee's Sale with pickup trucks and demanded the occupants leave their homes. People unknowledgeable of the law did so.  As Mr. Askew is a member of the Department of Real Estate, he erroneously failed to go thru the necessary channels and procedures to lawfully evict homeowners.  Based upon the actions of Asknew Marks believes each and every acquisition of Mr. Askew was in violation of law.

16.  Mr. Eikenberry filed an Unlawful Detainer action against Marks on behalf of TRA Partners and Trevnor Askew in California State Court.  Mr. Eikenberry filed several

-8-
AMENDED VERIFIED COMPLAINT FOR DAMAGES

1   motions and did not serve Marks with copies of the motions which were granted without Marks

2   having ever been served.  Mr. Eikenberry then filed a Motion for Summary Judgment which

3   the State Court DENIED citing defects in Mr. Eikenberry's pleadings.  Mr. Eikenberry then

4   filed for an Unlawful Detainer Trial.

5        17.    Marks filed a fraud complaint against TRA and Trevnor Askew, but the State

6   Court systematically DENIED Marks right to have the allegations of fraud heard BEFORE the

7   unlawful detainer trial.  Marks has plead that certain State Court Judges are landlords in

8   Oakland and have boasted of same during hearings.  These matters are currently under appeal

9   in the State Court.  Marks does not expect any justice in state court.  See the Request for

10  Judicial Notice, filed concurrently herewith.

11       18.    At the unlawful detainer trial, the Jury awarded TRA a monetary sum, not the

12  property.  Marks then filed for protection of the automatic stay in Bankruptcy court.  Marks

13  filed a Notice of Appeal in the Unlawful Detainer State court cast on the same date.  Marks

14  also had a process server serve both Department 30 of the State Court AND Mr. Eikenberry of

15  her filing Chapter 13.  Off the record, Judge Le was considering continuing the Unlawful

16  Detainer Trial so the underlying fraud case could be heard.  Mr. Eikenberry told the judge that

17  Marks would not prevail because she did not sue the right parties.  The judge did not ask

18  Marks, she simply agreed with Mr. Eikenberry as if Marks was not even in the room.  These

19  acts clearly violate judicial powers and fair and impartial treatment, or so it seemed to Marks.

20  This matter is also currently under appeal, Marks does not expect justice or fair treatment of

21  any kind at the State Court level.

22       19.    While Marks was protected by the Automatic Stay was in effect, Mr.

23  Eikenberry filed several motions and obtained a Demurrer judgment against Marks.  Mr.

24  Eikenberry continued to file motions and mail Marks notices of various hearings in clear

25  violation of the automatic stay.  Currently, Marks has filed a Motion to Tax Costs. Mr.

26  Eikenberry wanted Marks to appear in his office for a deposition.  Marks refused.  Even after

27  advising the court Marks continued to REFUSE to appear at the deposition.  The Le court

28

AMENDED VERIFIED COMPLAINT FOR DAMAGES

1   ordered that Marks had until 9 am the next day to notify Eikenberry whether or not she would

2   appear at the deposition.  Marks called Eikenberry's office at 7 AM to advise him she would

3   NOT be appearing.  The next day Mr. Eikenberry presented the court with an invoice for court

4   reporter's fees.  Marks objected.  Mr. Eikenberry explained to the Le Court that he had the

5   court reporter remain all day just in case Marks changed her mind.  Marks had to bring a

6   motion to tax costs to defeat the unlawful fees Attorney Eikenberry is seeking.  Marks expects

7   the Le court to GRANT the fees, with full knowledge that Marks did not attend the deposition,

8   as this has been the parttern of injustice Marks has suffered in Department 31 of the Alameda

9   County Superior Court.

10       20.       During the unlawful detainer trial Marks brought to the Le Court's attention that

11  the Loan Number upon which the foreclosure was based is NOT a loan related to Marks Deed

12  of Trust.  Marks brought it to the Court's attention that Marks had no obligation of any kind to

13  the referenced loan number.  Marks presented to the Le Court that based upon these reasons,

14  the foreclosure and unlawful detainer actions were fatally defective.  The Le Court ruled that

15  "that did not matter".  Marks continues to suffer manifest injustice in these matters.

16       21.       When viewed in the totality of the circumstances, this matter is not simply a

17  case of innocent, hard working, honest, home purchasers and borrowers being duped and being

18  taken advantage of by unscrupulous individuals and lending companies. This case deals with

19  arrogant, irresponsible and greedy companies that made predatory, toxic and ultimately

20  unaffordable loans to these Borrowers - VICTIMS, and preyed on gullible, unsophisticated

21  consumers, and, among other things, the:

22              a.       Standing[1] at the outset, of any putative person or entity that claims

23

24  [1]  The issue of "Standing" is a basic issue of Constitutional Law either at the Federal level or at the state
     district court level. That is to say, if you are not the person directly injured or directly benefiting from a
25  specific law or circumstance, you cannot go to court and try to enforce any rights that do not belong to you.
     The United States Supreme Court in several cases has stated that federal courts must satisfy for themselves
26  that Standing exists and that "the plaintiff has `alleged such a personal stake in the outcome of the
     controversy' as to warrant his invocation of federal-court jurisdiction." *Warth v. Seldin*, 422 U.S. 490, 498-
27  99 (1975).  Thus, if no direct injury or direct harm to the claimant that wishes to pursue a claim in court,
     then no right to "standing" or right to be in court in the first place.

28

AMENDED VERIFIED COMPLAINT FOR DAMAGES

to have the power to enforce through foreclosure, the default rights under the applicable mortgage promissory notes (and the deeds of trust) in a securitized mortgage, REMICS or Conduit Loan schemes;

b.    Legality of so-called "Negative Amortization Loans"; [2]

c.    Legality of lenders' failure to disclose the aggregate costs involved in so- called "Negative Amortization Loans";

d.    Legality of failure to disclose the aggregate costs of the transaction involved in so-called "Negative Amortization Loans" and any accompanying subordinate financing schemes to purchase or refinance a residential dwelling, which, but for the subordinate financing, the transaction as a whole would not have taken place. Simply put, if the only way you can afford to buy a house is with a second loan, then the costs of that loan should be included in the "costs" of the first loan so the buyer can make an informed decision.

e.    Legality of failure to completely account for the aggregate costs of a transaction which purports to disclose a "yield spread premium" ("YSP"), but yet entirely fails to include that YSP in the calculations applicable to the Truth in Lending Act Disclosures ("TILA Disclosures");

f.    Legality of failure to disclose the applicable "par value" of a loan transaction before the transaction is made or completed.

g.    Legality of the failure to properly account for, disclose, and calculate or list all the quantifiable reasons for the difference that exists between the YSP and the "par value" costs of a loan so as to properly and adequately

---

[2] The term Negative Amortization loan or NegAm loan in this Complaint refers to mortgage loans that have a "negative amortization" feature. Under the NegAm feature, any accrued interest on a mortgage loan is deferred and added to the outstanding original Principal balance of that mortgage loan if the minimum monthly payment on such mortgage loan on its interest payment date is less than the amount of accrued interest due on that mortgage loan on that payment date. As a result, because the initial payments on these NegAm mortgage loans were "teaser rates" that typically started at 1% or 2%, interest began accumulating from the day of settlement forward. This resulted in a re- calculation of the interest rate each month as the principal balance increased each month

AMENDED VERIFIED COMPLAINT FOR DAMAGES

inform Borrowers the reasons or guidelines as to why they obtained an "above par value" pricing for their particular loan; especially if, as stated in the loan applications which are the subject of the present Complaint, Plaintiffs had excellent credit and, in some cases, as stated by the OSSAS and MORTGAGE UNLIMITED BROKER in Plaintiffs' loan applications, Plaintiffs earned well over their real and unadjusted incomes.

h.      Legality of whether a "pool" or "tranche" of securitized mortgage backed securities, whose associated pool has been paid by its "loss of value insurer," or various "credit enhancement policies" may still foreclose on homes belonging to that pool in a double payment, triple payment or even quadruple payment scheme. That is to say, if the investments have already been paid off or "bailed out" by their "securitized pool insurer or credit enhancement policy or guarantee" or "bail out federal government entity", are the putative investors still entitled to foreclose on consumers that have not been "bailed out." Further, if the investors have already been paid once, why do they continue to have the right to get paid out yet a second time if they already had required "loss reserves" insured against the possibility of default; and that is even before a foreclosure is completely processed. To add insult to injury and add profits for the nefarious actors in these schemes, a foreclosure essentially effectuates a potential payment of yet a third time on the same notes, pools, or tranches of securitized mortgage backed securities. And because of how the Internal Revenue Code is written (e.g. Internal Revenue Code of 1986 Sections 860D and 1031)[3] and applied to these Conduit Loan activities, these profits are potentially tax free to the pool owners or investors, giving them yet a fourth source of profit distribution to the investors

---

[3] In this Complaint, a qualified real estate mortgage investment conduit is defined in §§ 860A through 860G of the Internal Revenue Code of 1986 (the "IRS" Code"), as amended. The "Defeasance" of REMICs, if done properly and to minimize the tax effects inherent therein, is controlled by the like-kind exchange provisions of IRS Code § 1031.

that purchase the securitized debt obligations in a securitized mortgages pool scheme. Considering the "bail out" payments and the totality of the circumstances, the Defendants' behavior is not just egregious, unconscionable, arrogant, irresponsible, and greedy; it is outright robbery and theft being perpetrated against innocent and unsuspecting victims: 1) the people who signed up for these loans and 2) the American taxpayer.

      i.     Legality of whether a merely putative "holder or servicer of the Note" but not the direct "beneficiary of payments of the Note", has the standing to enforce any provisions of the Note, including the power to enforce the Note by foreclosure; especially when the original Promissory Note is lost.   In this Complaint, a qualified real estate mortgage investment conduit is defined in §§ 860A through 860G of the Internal Revenue Code of 1986 (the "IRS" Code"), as amended. The "Defeasance" of REMICs, if done properly and to minimize the tax effects inherent therein, is controlled by the like-kind exchange provisions of IRS Code § 1031.

      j.     One sided practical application of the 33 Act §104[4] disclosures and SEC Rule 424(b)(5). Specifically, when applied to the mortgage securitization industry, the prospective pool issuer or sponsor of the REMIC pool or Conduit Loan must comply with the disclosure requirements of the 33 Act by filing a "424(b)(5)"[5] prospectus or private placement memorandum. That Rule 424 filing

---

[4] Securities Act of 1933, § 10(d):  Classification of prospectuses: "In the exercise of its powers under subsections (a), (b), or (c), the Commission shall have authority to classify prospectuses according to the nature and circumstances of their use or the nature of the security, issue, issuer, or otherwise, and, by rules and regulations and subject to such terms and conditions as it shall specify therein, to prescribe as to each class the form and contents which it may find *appropriate and consistent with the public interest* and the protection of investors [emphasis added].

[5] Securities and Exchange Commission Rule 424(b)(5) requires that:  "A form of prospectus that discloses information, facts or events covered ... shall be filed with the Commission no later than the second business day following the earlier of the date of the determination of the offering price or the date it is first used after effectiveness in connection with a public offering or sales, or transmitted by a means reasonably calculated to result in filing with the Commission by that date."

warns any prospective investors, before the prospective investor buys securitized mortgage certificates, that certain loans in the proposed securitized mortgages pool possessing Negative Amortization or interest only loan characteristics present a "…likelihood of default, especially in the early years…." Yet, in violation of the 1933 Act §10 itself, potential borrowers are never warned or told that their loan type is likely to fail or likely to default regardless of the borrower's high credit score, intention, and valiant effort to pay the mortgage loan. This failure to "trickle down" and "enforce the warnings and disclosures" as against mortgage loan borrowers is in direct contravention of the 33 Act §10 itself which states:

> In the exercise of its powers …, the Commission shall have authority to …prescribe … the form and contents which it may find appropriate and consistent with the public interest and the protection of investors [emphasis added].

Failing to warning borrowers that their loans are likely to default because of the nature and characteristics of their loan itself is appropriate and consistent with the public interest.[6] These failures of any putative interested party to have the legal standing to foreclose on defaulting mortgage promissory notes which are part of a mortgage securitization scheme; failures to make otherwise valid and non-negative amortization loans to finance home purchases or refinancings; failures to aggregate financing costs; failures to properly account for all the costs and finance charges associated with Negative Amortization loans; failures to account for and aggregate *ad initio* for the cost effects of subordinate financing in a given transaction; failures to adequately create, maintain, and monitor any indicia of quality and/or

---

[6] This failure to require and enforce appropriate borrower disclosures at the time the securitized loan is made or applied for renders the SEC potentially culpable if not complicit in the predatory lending schemes which are the subject of this Complaint. Basically, what is good for the goose is good for the gander. These Negative Amortization loans actually create a galling and perplexing dichotomy in the respective prospectus filed with the SEC: always protect the investors and disclose all potential default risks in a certain securitized investment pool, but drown the borrowers themselves and never warn the borrowers; regardless of whether it is in the public interest to warn the borrowers of the default risks inherent in the loans themselves. The effects of these failures are being felt all over the country.

1   quality control for those individuals and entities originating loans so that loan applications

2   would be accurately and truthfully completed; failures to properly disclose all other hidden

3   costs in connection with the financing of a consumer transaction; failures to give timely Truth

4   in Lending Disclosures or Good Faith Estimates; failures to properly state the immigration

5   status of certain individuals when stating that certain individuals are US Citizens when in

6   reality they are Legal Permanent Residents or even Undocumented Aliens of this country;

7   failures to make sure that bank statements would not be altered, falsified, or otherwise

8   improperly completed or tampered with so as to show higher than existing savings and

9   checking account balances at the time of loan application; failures to show the proper and

10  chronological "chain of custody" of a Promissory Note in the securitized mortgage backed

11  securities market so as to unquestionably give the right to the "holder" of the Note to enforce

12  the Notes by foreclosure when the Notes default; failures to disclose to borrowers the risks

13  inherent in Negative Amortization loans; and failures to account for "bail out" fund payments,

14  credit enhancement payments (e.g. securitized mortgage pool default insurer), loss reserve fund

15  payments, and getting paid out perhaps no less than three (3) times on the same mortgage notes

16  when a foreclosure is instituted against the Plaintiffs, are in direct violation of TILA, RESPA,

17  HOEPA, RICO, the 33 ACT, Immigration laws, federal and state Bank Fraud laws, and others.

18  Additionally, this suit also raises issues of actual fraud and artifice designed and perpetrated by

19  various parties acting in concert and preying upon unsuspecting consumers.

20        22.     These securitized mortgage pools were set up in a manner which allows them to

21  function as racketeering activities in glorified pyramid and ponzi schemes operating under the

22  color of law. Further, these deceiving, underhanded, and egregious activities generated (and

23  continue to generate) payments that had the effect of artificially inflating the cost of the

24  consumers' loans, and reap for the Defendants quite substantial, illegal, unconscionable, on-

25  going, and improper profits at the expense of the Plaintiffs and other similarly situated class

26  members. As we now know from the mortgage mess we are all experiencing, these illegal

27  profits are ongoing. Most disconcerting, all these violations had the immediate and incurable

28

1    effect of ruining innocent peoples' lives; ruining Plaintiffs' American dream of owning a home

2    they could afford; ruining Plaintiffs' credit, credit histories, and credit scores; exhausting any

3    family savings and retirement funds; and ruining all Plaintiffs' health given the enormous

4    stress as Plaintiffs will likely be rendered homeless due to foreclosure of their homes at any

5    given moment because of their inability to pay the mortgage loans that Defendants set up for

6    them.

7         23.    To make a cruelly and sadly accurate analogy: this is not a simple case of

8    leading lambs to the slaughter.  Rather, it is a case of salivating carnivores dressed in lambs'

9    clothing luring unwitting and docile lambs to the feeding trough with promises of finding

10   delicacies, and then using them to feed their insatiable feeding frenzy.   Like rapacious

11   scavengers, they pick apart the body and soul of their innocent and unsuspecting victims.  Even

12   after the loans started "defaulting" these insatiable scavengers continue to feed on their

13   victims' bodies and souls by securitizing, collateralizing, and re-selling these loans in

14   "tranched investment pools", "securitized investment pools", "non-agency mortgage backed

15   security pools", and other "securitized debt derivatives" that get cross-defaulted and/or cross-

16   swapped, insured, re-insured and ultimately paid-off (perhaps multiple times) before even

17   reaching the unsuspecting taxpayers and guaranteed government bail-outs. Specific allegations

18   regarding the Defendants' ponzi scheme and modus operandi are more fully set forth below.

19        24.    After the wrongful foreclosure, Defendant TRA Partners, LLC conducted

20   several "repairs" and "upgrades on the Subject Property.  Marks has learned that these

21   "upgrades" were performed by undocumented workers and no inspector from the City of

22   Oakland inspected the work of these undocumented workers before and after the "upgrades"

23   were made.  As such, the Subject Property may now be in jeopardy as the parties not only had

24   no authority to perform any work on Marks property without her permission, they had no

25   authority to use undocumented workers to perform the upgrades.  Marks home may now be

26   damaged by faulty upgrades and other damages.  Defendants failed to repair items that should

27   have been repaired had a proper inspection been performed on the Subject.  Defendants failed

28

to conduct proper inspection of the Subject Property, to ensure a prospective homeowner would receive the best quality home.

25.     Since the unlawful Detainer Kyle Crabb, licensed broker with the California Department of Real Estate posted a sign to sell the property on the front lawn of the Subject Property.  Marks contacted Kyle Crabb, who stated he is well aware that the property is in litigation but the attorney Eikenberry told him to sell the property.  When Marks asked him why he would sell a property he knows does not have clear title and is currently in litigation, Mr. Crabb stated that no company would issue title insurance if the title is not clear. Unfortunately for Mr. Crabb, Defendant Fidelity Title Company aka Default Resolution Network would issue such a fraudulent title.   As such Mr. Krabb as representative of Defendant Access Direct Realty, Inc. is participating in the racket to entice purchasers to buy a property he is well aware has a defective title and is in active litigation in several courts of law. These acts also contradict and violate the duties of a Real Estate Broker in the State of California.

**II.     OTHER RELEVANT AND PERTINTENT FACTS**

1.     The issues outlined and challenged by this Complaint seem complicated but in fact are very simple.  Defendants, and each of them participated in a racket to defraud a certain class of people, namely the elderly, the handicapped, minorities and those with low credit scores, in a scheme to defraud them of the equity in their homes if they had one.  If they did not have a home, the Defendants racket included falsifying documents, and taking every step with reckless disregard the law of the land, civil rights, human rights, or fair dealing and set the targeted group into mortgages they could not afford.  These Defendants, and each of them, participated in a rackets to profit by betting against the loans they created to fail and collect insurance payments in amounts in excess of 20x's the maturity value of the fraudulent mortgage note.

2.     Many fraudulent acts took place here.  Fraudulent overvaluation of real estate, by unlicensed "real estate appraiser" representatives of subprime bank; the fraudulent creation

AMENDED VERIFIED COMPLAINT FOR DAMAGES

1 | of stated income,  the fraudulent transfer of funds, the fraudulent creations of balloon

2 | payments, the fraudulent methods of collection on these payments, and fraudulent foreclosure

3 | among numerous other crimes.  The attempt to sell a property with a tainted title is also among

4 | the violations Marks properly alleges here.

5 |     3.    Thus, like an orchestra that has been perfectly choreographed and through the

6 | help of their aiding and abetting associates at law firms, the securitization pool managers,

7 | servicers, issuers and owners, betting against the fraudulent mortgages created with deadly

8 | MALICE AFORETHOUGHT, these Defendants continue their reign of lawlessness and terror

9 | in court of law, including perpetrating fraud upon the court. Although foreclosing law firms

10 | and trustees have a fiduciary duty[7]  to both a Lender and a Borrower to make sure that the

11 | foreclosing entity actually has the power or authority to commence foreclosure proceedings,

12 | these firms rarely comply with and most times even ignore their fiduciary duty to the affected

13 | Borrowers. It is not helpful that their unchallenged participation in the foreclosure process

14 | provides these conspirators and aiders and abettors with hefty legal fee revenues and, at times,

15 | commissions of 5% or more of the sale price of a given foreclosed property. Since their

16 | activities are  "presumptively valid" by statute in a non-judicial foreclosure jurisdiction like

17 | Virginia, these participating foreclosure law firms and foreclosing representative entities are

18 | hardly ever challenged or questioned in court.  These actions by Defendants and their attorneys

19 | can be deemed as fraud upon the court among other bad faith acts.

20 |     4.    To put it more simply and to keep things in perspective, we need to borrow

21 | some case law that has developed from the product liability cases. For instance, just because a

22 | child plays with a defective toy and loses an eye, the fact the toy maker did not know that the

23 | product was defective does not mean they are not liable for making a defective product.

24 | Similarly, just because car company executives do not know that their New Model car gas tank

25 | would explode on contact in a car accident, it does not mean they are not liable for the deaths

---

[7] See Powell v. Adams 179 VA 170 (VA Sup Ct 1942)(Deed of Trust Trustee has a fiduciary obligation to all parties of the Deed of Trust; not just the Lender).

1  of all affected and charred New Model drivers and passengers.

2      5.      Plaintiff seeks actual damages; statutory penalties and damages; the costs of this

3  action; compensatory and punitive damages; mandated, injunctive relief covered by this

4  Complaint pending resolutions of the issues being raised herein and pending appeals; attorneys'

5  fees; and other legal, equitable and remedial damages that this Honorable Court may deem

6  necessary or appropriate.

7      6.      Plaintiff alleges Defendants and each of them misrepresented facts, falsified

8  documents, filed and recorded documents Defendants knew or reasonably should have known

9  to be false or fraudulent on their fact, with the intention to steal Plaintiff's homestead, the

10 Subject Property, falsely allege Plaintiff owed sums to Defendants which she did not owe, to

11 force Plaintiff to either pay large sums of money to Defendants which they were not entitled to

12 receive, and based upon the fraudulent misrepresentations of Defendants and fraud upon

13 various courts, effect an unlawful foreclosure and eviction for the sole purpose of unjust

14 enrichment and monetary profit to the sole benefit of Defendants.

15     7.      In the matter at bar Marks has not only had to defend her home against the

16 BANKS  that defrauded her, but also the subsequent investor who knowingly and willfully

17 violates the law by boldly attempting to steal Marks home with no legal standing to do so.

18 Marks has had been victim to the prejudices of several state Court judges whose ruling are

19 clearly contrary to and in violation of current law.  Marks mortgage was satisfied in 2007.

20 Marks is now defending her home from a fraudulent attempt to sell the property before her

21 concerns are properly heard in a court of law without bias or prejudice to Plaintiff and her

22 family.

23 **III.  JURISDICTION AND VENUE**

24     1.      Plaintiff is and at all times mentioned herein, is an individual and the sole owner

25 of certain real property commonly known as 3099 Suter Street, Oakland, California

26 (hereinafter the "Subject Property")

27     2.      The transaction took place in this jurisdiction and this Court is the proper venue

28

1  for this matter.

2       3.     This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334.

3       4.     This District is the proper venue for this proceeding pursuant to 28 U.S.C. §

4  1409.

5  **IV.  THE PARTIES**

6       1.     Plaintiff, **LESLE PATRICE BARNES MARKS** (hereinafter "MARKS") is

7  and was at all times material to this Complaint a resident of Alameda County, California and

8  the sole rightful owner of the property commonly known as 3099 Suter Street, Oakland,

9  California ("The SUBJECT PROPERTY").

10       2.     Defendant, **GREENTREE LOAN SERVICING, LLC**, (hereinafter

11  "GREENTREE") is and was at all times material to this Complaint a corporation doing

12  business in California. GREENTREE recorded robo-signed documents in the Alameda County

13  Recorder's office and used defective documents to effect an fraudulent foreclosure sale.

14  GreenTree also committed fraud by claiming it obtained Marks Property from Ocwen but the

15  Assignment is signed by a representative of Defendant "GreenTree" signing on behalf of

16  Defendant "Home 123" aka New Century, a company that no longer exists and is in ACTIVE

17  bankruptcy in Delaware as the New Century Liquidating Trust. This Assignment would have

18  to be approved by the Delaware Bankruptcy Court and signed by the New Century Liquidating

19  Trustee to be valid in 2010. Furthermore, Home 123's license to conduct mortgage business in

20  California was revoked in 2007 by the Department of Corporations. For these reasons, the

21  document is defective on its face. The Assignment and substitution of Trustee are both

22  defective, clearly fraudulent and should be deemed void.

23       3.     Defendant, **DEFAULT RESOLUTION NETWORK**, (hereinafter "DRN") is

24  and was at all times material to this Complaint a corporation doing business in California.

25  DRN conducted the fraudulent foreclosure. DRN recorded a defective Notice of Default

26  referencing a loan to which MARKS has and has never had any obligation. Additionally, the

27  Notice of Default was recorded prior to the fraudulent Assignment and substitution of Trustee.

28

-20-
AMENDED VERIFIED COMPLAINT FOR DAMAGES

As such, the Notice of Default was defective and void.  DRN filed fraudulent documents in the Alameda County Recorder's office.

4.        Defendant, **NEW CENTURY LIQUIDATING TRUST**, fka, (and currently known as) **NEW CENTURY MORTGAGE dba HOME 123 CORPORATION** (collectively these specific defendants are referred to herein as **NEW CENTURY or HOME 123** – when joined with other named defendants they are collective included in the term **DEFENDANTS**.)  NEW CENTURY was and is a Delaware corporation doing business in the Sate of California and was and is in the business of being a "servicer" of "federally related mortgage loans" as those terms are defined in the Real Estate Settlement Procedures Act ("RESPA"), 12. U.S.C. §§ 2602(1) and 2605(i)(2).  Plaintiff is further informed and believes and thereon alleges that New Century was and is in the business of the collection of consumer debts, either on behalf of itself or others, and it is therefore under the authority of the California Rosenthal Act ("Rosenthal Act"), Cal. Civil Code Section 1788 *et seq*.  Defendant New Century  was and is in the business of originating consumer credit transactions described in TILA.  On information and belief Plaintiff alleges that Defendant New Century regularly and routinely approved loans to unqualified borrowers, and implemented practices in this regard ranging from questionable to criminal.  Further on information and belief, Plaintiff alleges that New Century's sales people worked on commission, the more loans they sold, the more bonus money they received.   Plaintiff also alleges on information and belief that New Century salespeople  received a greater commission or bonus for placing borrowers in loans with relatively higher yield spread premiums, and therefore borrowers were steered and encouraged into loans and terms less favorable than other loans for which the borrowers could actually qualify.  New Century ultimately filed for bankruptcy in 2007 and the bankruptcy examiner's report observed that New Century had a brazen obsession with increasing loan originations, without due regard to the risks.  New Century's practices have since subjected it and its officers to state and federal criminal investigations.

5. Defendant, **FIDELITY NATIONAL TITLE COMPANY, LLC.**, (hereinafter "FIDELITY" aka "DRN" is and was at all times material to this Complaint a corporation doing business in California. FIDELITY failed to expunge the 2007 Lis Pendens that MARKS recorded fraudulent against the Subject Property, prior to conducting the fraudulent Trustee's sale. FIDELITY then conducted a foreclosure sale with a property with a clouded title. FIDELITY filed fraudulent documents in the Alameda County Recorder's Office. Plaintiff is informed and believes and thereon alleges that at all time mentioned in this Complaint Defendant Fidelity aka DRN was and is an entity of unknown form doing business in the state of California, and was and is in the business of providing "settlement services" with respect to "federally related mortgage loans" as those terms are defined in RESPA, 12 U.S.C. §§ 2602(1) and 2602(3). On information and belief, Plaintiff further alleges that Fidelity (aka DRN) provides other real estate services that may be regulated by RESPA, TILA, the Rosenthal Act, or other state and/or federal statutes, the specific extent and nature of which are unknown at this time which are subject to discovery. With respect to which the specifics will be alleged by amendment to this Complaint when ascertained.

6. Defendant, **TREVNOR ASKNEW**, (hereinafter "ASKNEW") is and was at all times material to this Complaint an individual doing business in California. ASKNEW is a California Real Estate Broker registered with the Department of Real Estate. ASKNEW trespassed upon the SUBJECT PROPERTY on October 20, 2010 with another man and two pick up-trucks. ASKNEW attempted unlawful entry to the Subject Property with the clear intent to break into the Property and steal MARKS personal possessions. Asknew cannot be a bonafide purchaser for value. Asknew presents a handwritten receipt which does not reference Marks property, a receipt that can be used for any number of properties. Marks seeks damages against Mr. Asknew as a real estate professional in violation of his duties as same.

7. Defendant, **TRA PARTNERS, LLC.**, (hereinafter "TRA") is and was at all times material to this Complaint a corporation doing business in California. ASKEW is the only employee of TRA. ASKNEW and TRA claimed to purchase MARKS property at the

AMENDED VERIFIED COMPLAINT FOR DAMAGES

foreclosure sale for value.   ASKNEW produced a hand-written receipt which does not reference the SUBJECT PROPERTY.  ASKNEW did not produce a cancelled check, or other hard evidence to support purchase for value.  At the Unlawful Detainer Trial, the jury awarded TRA rental fees and did NOT award TRA the Subject Property.  Trevnor Askew is not, and cannot be a bonafide purchaser for value and possesses a worthless wild deed.  The rulings of the Superior Court are in bold violation of law and should be deemed void and invalid. Because Marks allegations of fraud were not heard BEFORE the unlawful detainer action and title remains tainted, the foreclosure, eviction, trustee's sale and trustee's deed upon sale must be reversed and Marks restored to her home as the sole lawful owner of the Subject property

8.      Defendant, **OCWEN** claimed to have received Marks property from New Century or Home 123 and FAILED to record any assignments.  Any such assignments would have had to be recorded prior to October 2007 when New Century and Home 123 lost its license to do business in California.  DEFENDANTS directly or indirectly benefited from these unlawful acts.

9.      Defendant, **ACCESS DIRECT REALTY, INC.** is listing the Subject Property for  with a tainted title for sale, with full knowledge of defective title, and with full knowledge a prospective buyer will have problems obtaining clear title until all litigation is resolved.

10.     Defendant, **KYLE CRABB** is a broker, licensed with the California Department of Real Estate who is acting agent for Access Direct Realty, Inc.  Mr. Crabb admitted to Marks that he is fully aware the property is in litigation.  As a licensed real estate broker in the State of California, he MUST advise any prospective buyer that the property is in active litigation and title is not clear.  He must also advise any prospective buyer that Marks advised him there is a defect in the fireplace, a houseline crack. Had Mr. Crabb made certain that a proper inspection was done on the property, he would be well aware of all the defects as well as the title issues.

AMENDED VERIFIED COMPLAINT FOR DAMAGES

11. Collectively, **OCWEN, GREENTREE, DRN, FIDELITY, ASKNEW, NEW CENTURY, TRA, ACCESS DIRECT REALTY, INC and KYLE CRABB** are referred to herein as "DEFENDANTS".

12. Plaintiff is ignorant of the true names and capacities of the Defendants sued herein under the fictitious names Does 1 through 100, inclusive, and Plaintiff will amend this Complaint to allege such names and capacities as soon as they are ascertained. Plaintiff is informed and believes and thereon alleges that each of said fictitiously named Defendants is responsible in some manner for the acts complained of herein.

13. Plaintiff is informed and believes and thereon alleges that Defendants and each of them, at all times herein relevant were, and still are, agents for one another, and acting under the course and scope thereof, with knowledge and consent of each other.

14. This is an action for damages in excess of $75,000,000 exclusive of interest and costs. Injunctive and declaratory relief is also sought herein.

15. NEW CENTURY, OCWEN and GREENTREE violated RESPA by failing to provide Plaintiff with the RESPA required 15 day notice prior to transfer.

16. Marks paid $149,000 for her property approximately 12 years ago. GREENTREE attempted to unlawfully, wrongfully collect various sums from $0.0 to $2,000,000.00. Defendant GreenTree filed fraudulent documents in the Alameda County Recorder's office and proceeded to steal Marks property based upon these defective documents.

17. OCWEN and GREENTREE obtained a note that was satisfied in 2007, claimed it to be in default and filed and recorded documents to support their fraudulent acts. DEFENDANTS directly or indirectly benefitted from these unlawful acts.

18. FIDELITY and/or dba DRN wrongfully enforced a foreclosure sale without verifying that GreenTree is the Bonafied lender in due course and has the lawful right to foreclose. DNR also foreclosed upon a loan to which Marks has NO obligation and did not default upon. Marks requests quiet title of her homestead as the sole lawful owner.

19.     GREENTREE claimed and filed and recorded fraudulent documents that it is the servicer for Home 123 a corporation that is no longer in existence, has not had leave of the Delaware Bankruptcy court to evidence effective, legal or lawful transfer.  Furthermore, Marks has received no RESPA required transfer from Green Tree to Home 123 nor transfer from Home 123 to GreenTree.  No defendant has any ecorded documents that evidence ownership of Marks property that are not based upon fraudulent documents of another Defendant. There are no recorded documents evidencing transfer in 2007 to any Defendant.  Any recorded transfer after that time is defective, fraudulent and moot.  Marks is seeking these documents be deemed defective and void.  Marks seeks the recovery of possession of her home and all damages this most honorable court deem fair, just and proper.

20.     DEFAULT RESOLUTION NETWORK is the entity overseeing the fraudulent Trustee Sale, failing to confirm that GREENTREE had any right to foreclose.  The Notice of Default lists a loan number to which MARKS  has no obligation.  Marks was not in default at the time of the foreclosure.

21.     This is an action under the Truth-in-Lending Act, 15 U.S.C. 1601 et, seq.  This Court has jurisdiction under U.S.C. 1640 and 28 U.S.C. 1331, 1337 and 1367.

22.     Defendants have wrongfully transferred Marks property among themselves, supported by fraudulent documents and robo-signed documents.  Defendants had no lawful standing to foreclose on Marks.  No Defendant has any standing to claim ownership of Marks homestead and primary residence.   Each Defendants has become unjustly enriched and benefitted from their collective fraudulent acts.

23.     When the loan was consummated, Plaintiff did not receive required documents and disclosures, including, but not limited to, the Truth-in-Lending Disclosure Statement containing  required material disclosures and the required number of copies of the Notice of Right to Cancel containing the date that the rescission period expires.  Other violations have come to light, to which Defendants and each of them are liable to Plaintiff and her family. Defendants RICO schemes have caused Marks and her family financial devastation.

AMENDED VERIFIED COMPLAINT FOR DAMAGES

1

**REQUEST FOR INJUNCTIVE RELIEF**

2    24.    Immediate injunctive relief is warranted in this action because Plaintiff has been

3    wrongfully evicted and Defendant TRA and ASKEW have conducted unauthorized repairs to

4    Marks home without obtaining the proper permits and using undocumented workers to

5    complete the work. Marks has verified that no permits were obtained complete construction on

6    her property with the city of Oakland Inspectors office and has filed a complaint (Complaint

7    for Home Code Enforcement Violation No. 1106571) with that office alleging same.)

8    Defendants should be enjoined from performing further construction which may be defective.

9    25.    Defendant TRA prevailed in at an unlawful detainer proceeding as to the

10    Property, and as a result, a writ of Possession was issued in favor of TRA,  However, Plaintiff

11    contends that the foreclosure sale itself should be set aside, for the reasons set forth in the

12    instant complaint.  Furthermore Defendants seeks to be unjustly enriched by profiting by

13    damaging Marks' property using undocumented workers, performed work without permits, and

14    failing to notify prospective buyers of this fact may result in a unlawful sale and more

15    litigation.

16    26.    The issues raised herein were not considered in the unlawful detainer proceedings,

17    and are therefore not subject to res judicata.  The State Court failed to hear Marks allegations of

18    fraud prior to the unlawful detainer trial.    Because of its summary character, an unlawful

19    detainer action is not a suitable vehicle for trying complicated ownership issues involving

20    allegations of fraud. *Mehr v Superior Court* (1983) 139 CA3d 1044, 1049, 189 CR 138. See

21    *Berry v Society of Saint Pius X* (1999) 69 CA4th 354, 363, 81 CR2d 574 (title cannot generally

22    be tried in unlawful detainer action); *Asuncion v Superior Court* (1980) 108 CA3d 141, 145–146,

23    166 CR 306 (eviction of homeowners following foreclosure raises due process issues and cannot

24    be heard as part of summary unlawful detainer proceeding).  Issues extrinsic to the right of

25    possession are generally excluded even though they arise out of the parties' landlord-tenant

26    relationship. *E.S. Bills, Inc. v Tzucanow* (1985) 38 C3d 824, 830, 215 CR 278; *Saberi v Bakhtiari*

27    (1985) 169 CA3d 509, 515, 215 CR 359.  Here Marks alleges that the parties who sold Marks

28

1  property had no right to do so.  Marks further alleges that the trustee's sale was based on

2  fraudulent documents recorded with the Alameda County Recorder's office.

3      27.     See also, *Pell v. McElroy*, 36 Cal. 268, 1868 Cal. LEXIS 186 (1868)  The fact of

4  open, notorious, and exclusive possession and occupation of lands by a stranger to a vendor's

5  title, as of record, at the time of a purchase from and conveyance by such vendor out of

6  possession, is sufficient to put such purchaser upon inquiry as to the legal and equitable rights of

7  the party so in possession, and such vendee is presumed to have purchased and taken a

8  conveyance from the vendor with full notice of all the legal and equitable rights in the premises

9  of such party in possession and in subordination to these rights; and this presumption is only to

10  be overcome or rebutted by clear and explicit proof on the part of such purchaser, or those

11  claiming under him, of diligent, unavailing effort by the vendee to discover or obtain actual

12  notice of any legal or equitable rights in the premises in behalf of the party in possession. And

13  when the location of the lands is such as to render personal application to and inquiry of the

14  occupant practicable, a purchaser failing to make such application and inquiry is no more entitled

15  to be regarded a purchaser in good faith than if he had so inquired and ascertained the real facts

16  of the case.

17      28.     Injunctive relief should be granted as Plaintiff has suffered manifest injustice

18  litigating these matters for over six years.  Given the fact that every stage of these events, from

19  the loan origination to foreclosure sale and the resulting wrongful eviction Plaintiff has

20  suffered public humiliation, financial devastation and other harms, including ruining Plaintiff's

21  credit.  Three Defendants have the same loan with different loan numbers on her credit report,

22  making it seem she is over one million dollars in debt.  Plaintiff had ONE mortgage and no

23  second, nor did Plaintiff have any equity line of credit.  Defendants have mislead Marks and

24  acted to her detriment.  No Defendant had the right to foreclose on her home.  The Unlawful

25  Detainer action was fraud upon the court.

26      29.     On information and belief, Plaintiff alleges Defendants, in committing the acts

27  alleged in this Complaint utilized the United States mail, telephones and internet in furtherance

28

AMENDED VERIFIED COMPLAINT FOR DAMAGES

1   of their pattern of conduct to unlawfully collect on negotiable instruments when they were not

2   entitled under the law to do so or, assuming *arguendo* that they were entitled, to profit from

3   these actions in amounts exceeding their rights under the Note.

4         30.    On information and belief, Plaintiff alleges Defendants , in committing the acts

5   alleged in this complaint and in other cases, are engaging in a pattern of unlawful activities.  In

6   pursuing non-judicial foreclosure, Defendants represented that they had the right to payment

7   under the Note, payment of which was secured by a Deed of Trust.  Whereas Defendants were

8   not in possession of the Note and they were neither holders of the Note nor entitled to payment

9   as those terms are used in California Commercial Code §§3301 and 3309, and therefore they

10  were proceeded to foreclose and unlawfully evict without right  under the law.  Defendants

11  added costs and charges to the payoff amount of the Note that were not justified or proper as

12  the Note was satisfied in 2007, and as such Marks could not be in default for the same note in

13  2010.

14        31.    Certain Defendant then created loan numbers and obligations filed and recorded

15  fraudulent documents and effected unlawful foreclosure and wrongful eviction.  Injunctive

16  relieve is warranted in these matters in the interest of justice.

17        32.    The Subject Property is unique.  Should the requested injunctive relief not be

18  granted, Plaintiff and her family will continue to suffer irreparable injury for which there is no

19  adequate remedy at law, causing the Subject Property to be loss to Plaintiff forever.

20        33.    Defendants have conducted their business in a manner which is not only bad

21  faith, but wholly contrary to law.  Defendants actions have not been regulated and as such

22  Defendants have contributed to the destruction of the world economy.  Defendants show no

23  remorse nor take responsibility for their bad faith acts.  Marks purchased the Subject Property

24  for about $180,000.  Defendants over appraised her home almost 600%, claiming the value to

25  be $650,000.  Defendants stole the equity from Plaintiff's home and left Plaintiff homeless.

26  Defendants have ruined Plaintiff's credit, three banks have the same loan with different

27  numbers fraudulently recorded on her credit report.  Plaintiff was not in default on her loan.

28

AMENDED VERIFIED COMPLAINT FOR DAMAGES

**FIRST CAUSE OF ACTION**
**CIVIL RICO**

**COUNT ONE:**
Acquisition and Maintenance of an Interest in and Control of
an *Enterprise* Engaged in a *Pattern of Racketeering Activity*:
18 U.S.C. §§ 1961(5), 1962(b)

1.     Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.  Substance prevails over form.

2.     At various times and places partially enumerated in Plaintiff's *documentary material*, all Defendants did acquire and/or maintain, directly or indirectly, an interest in or control of a RICO *enterprise* of individuals who were associated in fact and who did engage in, and whose activities did affect, interstate and foreign commerce, all in violation of 18 U.S.C. §§ 1961(4), (5), (9), and 1962(b).

3.     During the ten (10) calendar years preceding   August 1, 2010 *A.D.*, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ 1961(1)(A) and (B), and did so in violation of the RICO law at 18 U.S.C. 1962(b) (Prohibited activities).

4.     Plaintiff further alleges that all Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, *i.e.* a continuing threat of their respective *racketeering activities*, also in violation of the RICO law at 18 U.S.C. 1962(b) *supra*.

5.     Pursuant to the original Statutes at Large, the RICO laws itemized above are to be *liberally* construed by this honorable Court.  Said construction rule was never codified in Title 18 of the United States Code, however.  See 84 Stat. 947, Sec. 904, Oct. 15, 1970.

AMENDED VERIFIED COMPLAINT FOR DAMAGES

6.     *Respondeat superior* (principal is liable for agents' misconduct: knowledge of, participation in, and benefit from a RICO enterprise).

**COUNT TWO:**
Conduct and Participation in a RICO *Enterprise*
through a *Pattern of Racketeering Activity*:
18 U.S.C. §§ 1961(5), 1962(c)

7.     Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.  Substance prevails over form.

8.     At various times and places partially enumerated in Plaintiff's *documentary material*, all Defendants did associate with a RICO *enterprise* of individuals who were associated in fact and who engaged in, and whose activities did affect, interstate and foreign commerce.

9.     Likewise, all Defendants did conduct and/or participate, either directly or indirectly, in the conduct of the affairs of said RICO *enterprise* through a *pattern of racketeering activity*, all in violation of 18 U.S.C. §§ 1961(4), (5), (9), and 1962(c).

10.     During the ten (10) calendar years preceding July 1, 2010 *A.D.*, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ 1961(1)(A) and (B), and did so in violation of the RICO law at 18 U.S.C. 1962(c) (Prohibited activities).

11.     Plaintiff further alleges that all Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, *i.e.* a continuing threat of their respective *racketeering activities*, also in violation of the RICO law at 18 U.S.C. 1962(c) *supra*.

12.     Pursuant to 84 Stat. 947, Sec. 904, Oct. 15, 1970, the RICO laws itemized above are to be *liberally* construed by this honorable Court.  Said construction rule was never

-30-
AMENDED VERIFIED COMPLAINT FOR DAMAGES

1  codified in Title 18 of the United States Code, however. *Respondeat superior* (as explained

2  above).

**COUNT THREE:**
Conspiracy to Engage in a
*Pattern of Racketeering Activity*:
18 U.S.C. §§ 1961(5), 1962(d)

13.     Plaintiff now re-alleges each and every allegation as set forth above, and hereby

incorporates same by reference, as if all were set forth fully herein.  Substance prevails over

form.

14.     At various times and places partially enumerated in Plaintiff's *documentary*

*material*, all Defendants did conspire to acquire and maintain an interest in a RICO *enterprise*

engaged in a *pattern of racketeering activity*, in violation of 18 U.S.C. §§ 1962(b) and (d).

15.     At various times and places partially enumerated in Plaintiff's *documentary*

*material*, all Defendants did also conspire to conduct and participate in said RICO *enterprise*

through a *pattern of racketeering activity*, in violation of 18 U.S.C. §§ 1962(c) and (d).  See

also 18 U.S.C. §§ 1961(4), (5) and (9).

16.     During the ten (10) calendar years preceding July 1, 2010 *A.D.*, all Defendants

did cooperate jointly and severally in the commission of two (2) or more of the predicate acts

that are itemized at 18 U.S.C. §§ 1961(1)(A) and (B), in violation of 18 U.S.C. 1962(d).

17.     Plaintiff further alleges that all Defendants did commit two (2) or more of the

offenses itemized above in a manner which they calculated and premeditated intentionally to

threaten continuity, *i.e.* a continuing threat of their respective *racketeering activities*, also in

violation of 18 U.S.C. 1962(d) (Prohibited activities *supra*).

18.     Pursuant to 84 Stat. 947, Sec. 904, Oct. 15, 1970, the RICO laws itemized above

are to be *liberally* construed by this honorable Court.   Said construction rule was never

-31-
AMENDED VERIFIED COMPLAINT FOR DAMAGES

codified in Title 18 of the United States Code, however. *Respondeat superior* (as explained above).

19.     18 USC 891-984 Extortinate credit transactions;  1341 mail fraud, 1343 wire fraud, 1344 financial institution fraud, 1503 obstruction of justice, 1952 rackeetering, 1956 laundering of monetary instruments, 1957 monetary transaction derived from specified unlawful activity, and 29 USC 186 501c – fraud connected with a case under title 11, fraud in the sale of securities.

20.     Plaintiff has been harmed by the Defendants violations of current law and fraudulent acts.  Plaintiff continues to suffer manifest injustice as a result of Defendants unlawful act.  Plaintiff and her disabled son have had their home of 13 years unlawfully stolen from them and have suffered manifest financial burden as a result.

## SECOND CAUSE OF ACTION
### FRAUDULENT CONVEYANCE

21.     Plaintiff incorporates by reference all of the preceding paragraphs as though set Forth fully herein. Substance prevails over form.

22.     Defendants have wrongfully and unlawfully transferred Plaintiff's property among themselves in violation of various state, federal and consumer protection laws with fraudulent documents filed in various courts and recorded in the Alameda County Recorder's office.  Defendants recorded fraudulent documents in the County Recorder's Office in further violation of law.

23.     Under California law, to perfect transfer of mortgage paper as collateral the owner should physically deliver the note to the transferee. *Bear v. Golden Plan of California Inc.*, 829 F. 2d 705, 709 (9th Cir. 1986)  Without physical transfer, the sale of the note could be invalid as a fraudulent conveyance. *See, Roger Bernhardt, California Mortgages and Deeds of Trusts, and Foreclosure Litigation* § 1.26 (4th ed. 2009).  A Note specifically identifying a party to whom it is payable cannot be transferred unless the Note is indorsed. See Calif. Comm. Code  §§ 3109, 3201, 3203, 3204.

24.     It is well established law in the Ninth Circuit that the assignment of a deed trust does not assign the underlying promissory note and right to be paid, and that security interest is incident of the debt.  *Witkin Summary of California Law, Secured Transactions in Real Property* § 105 (10th ed).

25.     In the matter at bar, Defendants New Century have no evidence of transfer (and admitted same under oath at the evidentiary hearing in Delaware) and claim Plaintiff must take the word of an officer of the court that transfer was done.  As such, any claims of Defendants Ocwen, GreenTree, and TRA must be deemed void, not voidable.  Plaintiff and her family continue to suffer manifest injustice in these matters.

26.     Plaintiff has been harmed by the Defendants fraudulent acts.  Plaintiff continues to suffer manifest injustice as a result of Defendants unlawful act.  Plaintiff and her disabled son have had their home of 13 years unlawfully stolen from them and have suffered manifest financial burden as a result.

### THIRD CAUSE OF ACTION
### FRAUDULENT AND WRONGFUL FORECLOSURE

27.     Plaintiff incorporates by reference all of the preceding paragraphs as though set Forth fully herein.

28.     Plaintiff alleges that Defendants violated RESPA and TILA by postering to be secured creditors when they willfully and knowingly purchased a mortgage that was SATISFIED in 2007.  Plaintiff could not be in default in 2010.  As such the 2010 foreclosure was unlawful and should be overturned.

29.     *Taylor v. State Compensation Insurance Fund, 175* Mont. 432, 913 P.2d 1242 (1996) To sustain a claim of fraud, insurer was required to plead and prove each of the nine elements of fraud: (1) a representation; (2) falsity of the representation; (3) materiality of the representation; (4) speaker's knowledge of the falsity of the representation; (5) the speaker's intent it should be relied upon; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation; (8) the hearer's right to rely on the

representation; and (9) the hearer's consequent and proximate injury caused by reliance on the representation.

30.     Defendants represented themselves to be lenders or have other valid ownership of Marks home;  these representations were false as supported by assignments recorded in the Alameda County Recorder's office;  fraudulent documents were recorded by Defendants to perpetuate their fraudulent acts;  Marks commenced proceeding in courts of law based upon these fraudulent representations;  Marks home was at state so she relied on the false representations and took steps to defend her home;  Marks know knows the representations of each Defendant and the documents recorded by them were fraudulent;  and Marks has been injured by the unlawful loss of her home.   Marks has suffered for six (6) years seeking justice in these matters.  Marks and her family continue to suffer manifest injustice in these matters.

31.     The 2007 Lis Pendens remains recorded and provides constructive and actual notice as the Subject Property remains in litigation and title remains tainted.

32.     Plaintiff was NOT in default at the time of the unlawful foreclosure.

33.     No Defendant has or had the right to foreclose on Marks home.

34.     The loan upon which the foreclosure is based is NOT a loan related to Marks Deed of Trust nor is a loan upon which Marks has ever had any obligation.

35.     The foreclosing trustee had no authority to conduct the foreclosure sale, the Defendants, and each of them, committed unlawful acts which resulted in unlawful foreclosure.

36.     Plaintiff has been harmed by the Defendants violations of current law and fraudulent acts.  Plaintiff continues to suffer manifest injustice as a result of Defendants unlawful act.  Plaintiff and her disabled son have had their home of 13 years unlawfully stolen from them and have suffered manifest financial burden as a result.  Defendants, and each of them, have acted upon documents which are fraudulent on their face.  Defendants, and each of them, conspire in their racket to defraud innocent homeowners from there most prized possession, their Home.  Plaintiff did not purchase a home she could not afford.  Plaintiff did not have a second mortgage nor a line of credit on her homestead.

AMENDED VERIFIED COMPLAINT FOR DAMAGES

## FOURTH CAUSE OF ACTION
## FRAUDULENT AND WRONGFUL EVICTION

37.     Plaintiff incorporates by reference all of the preceding paragraphs as though set forth fully herein.

38.     The 2007 Lis Pendens remains recorded and provides constructive and actual notice as the Subject Property remains in litigation and title remains tainted.

39.     Plaintiff was NOT in default at the time of the unlawful foreclosure as such the subsequent eviction was unlawful.

40.     No Defendant was or is a bonafide purchaser for value.  See Exhibit F the only evidence of purchase of real estate – a HANDWRITTEN receipt.  No other evidence was presented to the State court as evidence of purchase for value.  Marks was not in default and the Notice of Default and the subsequent foreclosure sale were defective and fraudulent.  The Defendants participating in those activities were not authorized to conduct such transactions. These acts have resulted in Marks and her family suffering manifest injustice.

41.     Plaintiff has been harmed by the Defendants violations of law and fraudulent acts.  Plaintiff continues to suffer manifest injustice as a result of Defendants unlawful act. Plaintiff and her disabled son have had their home of 13 years unlawfully stolen from them and have suffered manifest financial burden as a result.

## FIFTH CAUSE OF ACTION
## RACIAL DISCRIMINATION

42.     Plaintiff incorporates by reference all of the preceding paragraphs as though set forth fully herein.

43.     The underlying causes of racial discrimination in the housing markets resemble those described for employment, but in some respects the pattern is more complex. In the market for the purchase of housing there are sellers who do not wish to sell to members of certain other groups. Many sellers engage real estate agents to sell their properties and these agents may then attempt to "steer" would-be purchasers towards properties in particular localities because of prevailing patterns of residential segregation. Purchasers also have their

-35-
AMENDED VERIFIED COMPLAINT FOR DAMAGES

own preferences as to the neighborhoods in which they wish to live. These preferences may be racially discriminatory or be influenced by a desire to avoid the discrimination practiced by other people. In the rental market likewise there are landlords who do not wish to rent apartments to persons of a particular group. The three factors of taste, risk and profit continue to operate but within a different structure. Private persons when selling houses or renting apartments are profit-oriented and might be expected to put financial gain before skin colour, yet often, instead of seeking maximum profit, they seem content to settle for a smaller gain by striking a bargain with someone of their own ethnic group. Sometimes a seller planning to sell to an outsider risks intimidation from those seeking to ensure that there is no change in the character of their neighborhood. When a municipality rents apartments its routines and policies will be determined politically and have often been found to be racially discriminatory. In these ways a new form of apartheid may be created, as in many United States cities.

44.     In this matter Defendants, and each of them preyed upon Marks as a black woman, and other minorities, sought out members of a specific class upon which to entice to obtain burdensome mortgages with the sole intent to result in unlawful foreclosure.  To enforce these unlawful acts, Defendants worked in concert to support each other in falsifying documents including loan documents and financial records.  In these processes Defendants failed to follow lawful procedure.

45.     In this matter Defendant ASKEW and TRA Partners in cahoots with Default Resolution Network aka Fidelity Title Company to defraud over sixty-eight (68) families in minority neighborhoods from their home.  ASKEW testified at trial that only Marks challenged their fraudulent activities.  Counsel for ASKEW, Kevin Eikenberry attempted to conspire with counsel for New Century in an attempt to manipulate Marks to fail to appear in a court hearing. Evidence of this manipulation is in the Bankruptcy Court in Delaware's docket in these matters and Marks has evidence she will present at trial.

46.     Marks and her family continue to suffer manifest injustice in these matters. Defendants continue in their acts in clear violation of law.

## SIXTH CAUSE OF ACTION
## VIOLATIONS OF THE AMERICANS WITH DISABILITLIES ACT

47.     Plaintiff incorporates by reference all of the preceding paragraphs as though set forth fully herein.

48.     The Americans with Disabilities Act (ADA) is a federal law that prohibits discrimination on the basis of disability.  In addition to protecting qualified applicants and employees with disabilities from employment discrimination, one ADA provision – the "association" provision -- protects applicants and employees from discrimination based on their relationship or association with an individual with a disability, whether or not the applicant or employee has a disability.

49.     In the matter at bar, Defendants have been made aware that Marks has a child with disabilities.  Marks pleas fell upon deaf ears as how something as minor to Defendants as change of location, such as moving Marks son from his home of thirteen (13) years would be a major hardship for him.  Defendants and each of them discriminated against Marks and her family by failing to take into consideration the adverse effects of wrongful foreclosure and eviction. As Marks properly alleges, these Defendants and EACH of them have caused Marks and her family to suffer financial, mental, emotional burden.  Marks and her family continue to suffer manifest injustice in these matters.

## SEVENTH CAUSE OF ACTION
## REAL ESTATE FRAUD

50.     Plaintiff incorporates by reference all of the preceding paragraphs as though set forth fully herein.

51.     Defendants have jointly and/or severly conspired and committed real estate fraud in violation of law by filing and recording documents they knew or reasonably should have known to be false at the time the documents were filed or recorded including, the Notice of Default, Trustee's Deed Upon Sale, Assignment by GreenTree to GreenTree.  Marks was not in default when litigation was initiated.  Defendants, failed to continue to service her

mortgage after she filed suit in 2006. The State Court orders and all of them are under appeal as void judgments.   The Unlawful Detainer court of limited jurisdiction does not have the power to award a property with a value in excess of $25,000.   As the 2007 Lis Pendens remains recorded and has not been expunged, ASKNEW nor TRA PARTNERS could not have been bonifide purchasers for value, nor could they have CLEAR TITLE.   DEFENDANTS conspired among themselves to become unjustly enriched by their concerted unlawful acts and by filing and recording filing fraudulent documents. Documents DEFENDANTS knew to be fraudulent at the time they filed/recorded them. Marks continues to suffer manifest injustice in these matters.

52.     Defendants are Real Estate professionals.   Defendants falsified documents to enable unlawful foreclosure for their own unfair profit.   Marks believes in their regular course of business, Defendants based upon falsified documents purchased a foreclosed properties at fraudulent trustees sales.   They then either break into the home or advise the owner that they must move.   Certain homeowners who are members of the discriminated class may not be aware they have any recourse and simply move out.   In some cases Defendants offer a minimal sum to "clean" the property before they move out.   These acts are criminal and unlawful. Furthermore, no Defendants reside in the neighborhoods upon which they prey.

53.     Defendants Access Direct Realty have placed a property for sale on the market that has had work performed by undocumented workers and without the required permits.   If Defendant Access Direct Realty sought to act in good faith, it would require that all defects be cured to ensure a sale of real estate in good faith.   These acts show this Defendant's part in civil RICO activities.

54.     The unlawful detainer action was based upon fraud and fraudulent documents. Defendants jointly or severly conspired and committed acts in violation of law to perpetrate real estate fraud which resulted in the unlawful theft of Marks home.   Evidence in this case clearly support this allegation against all Defendants, and will be made clear with evidence presented herein and at trial.

**EIGHTH CAUSE OF ACTION**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**

55.     Plaintiff incorporates by reference all of the preceding paragraphs as though set forth fully herein.

56.     Defendants violated state and federal laws by filing false and fraudulent information to the various credit bureaus including late fees and delinquent payments which Marks has not or never had any obligation to any Defendant.

57.     U.S. district court held that the Fair Credit Reporting Act (FCRA), 15 U.S.C. 1681 et seq., permits consumers to bring private causes of action against furnishers of information to credit reporting agencies who fail to properly investigate disputed credit information.  GreenTree, a servicing company has filed negative credit reports in the capacity of a lender, not a servicer.   Furthermore, it remains unclear, as in the original New Century/Ocwen matter whom exactly is the lender and/or the servicer.   Regardless as to whatever entity received lawful acquisition of Mark's property, only the lender can charge late fees and accrue monthly payments and authorize credit reporting.  Here Green Tree is nothing more than a debt collector.

58.     Each Defendant has tainted Marks credit report.  Each Defendant has made a negative reference to Marks credit in some manner by its fraudulent and unlawful acts in these matters to be proven at trial.  Marks continues to suffer manifest injustice in these matters.

59.     Defendants have the same loan with three different loan numbers on Marks credit report.  It appears Marks is in debt over $1,000,000 for one loan.  Marks did not have a second mortgage.  Marks did not have a line of credit.  Marks did not purchase a home she could not afford.  Marks was defrauded at the onset by Defendant New Century and the other Defendants participated in the fraudulent acts, as clearly evidenced and can only be called a RICO scheme.

60.     Furthermore, Marks has been in litigation in this matter for over six (6) years. Any diligent creditor, with the intention of acting in good faith performing reasonable diligence would see this matter has been in dispute as the 2007 Lis Pendens remains in full

-39-
AMENDED VERIFIED COMPLAINT FOR DAMAGES

force and effect.  Marks' 2007 Lis Pendens provides actual and constructive notice  that title is clouded, has not deterred these Defendants, specifically Green Tree from further damaging Marks' credit and failing to verify the account to which it intended to service in good faith. Defendants and each of them ignored this fact, and instead moved forward with their unlawful agenda in violation of state and federal laws.

## NINTH CAUSE OF ACTION
### VIOLATION TRUTH-IN-LENDING ACT 15 U.S.C 1601 ET SEQ.

61.     Plaintiff incorporates by reference all of the preceding paragraphs as though set forth fully herein.

62.     Defendant violated the Federal Truth-in-Lending Act 15 U.S.C 1601 et seq. (hereinafter "TILA").

63.     Defendants failed to provide Marks with RESPA required notice of transfer.

64.     No documents are recorded reflecting any defendant as the lawful lender in due courts.  The Notice of Default is fraudulent as Marks loan was satisfied in 2007.  As such, the unlawful foreclosure and unlawful eviction are fraudulent and void.

65.     Defendants are not entitled to foreclosure procedures, which Defendants are not entitled to initiate, participate in or conduct.

## TENTH CAUSE OF ACTION
### VIOLATION OF BUSINESS AND PROFESSIONS
### CODE SECTION 17200, ET SEQ.

66.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in the First, Second, Third, Fourth and Fifth Causes of Action as though fully set forth herein.

67.     Plaintiff incorporates by reference all of the proceeding paragraphs as though set forth fully herein.

68.     Plaintiff alleges that Defendants' conduct is immoral, unethical, oppressive, unscrupulous or substantially injurious to Plaintiff and requires this Court to weigh the utility of the Defendants' conduct against the gravity of the harm to Plaintiff.

69.     Plaintiff has suffered and is suffering and will continue to suffer injury and financial ruin as a direct and proximate result of Defendants deceptive acts as alleged above. Plaintiff is entitled under the Business and Professions Code Section 17200 to equitable remedy of restitution (i.e. disgorgement) of all money, property and benefits wrongfully obtained by Defendants (Plaintiff's Deed of Trust, etc.).

70.     Plaintiff brings this action as a private attorney general acting on Plaintiff's own behalf and similarly situated other persons pursuant to California Business and Professions Code §§ 17200, et seq. referred to as the Unfair Practices Act (herein after "UPA").

71.     Plaintiff is acting in this capacity to remedy the ongoing unlawful, unfair and fraudulent business practices alleged herein, and to seek injunctive relief and restitution on behalf of all persons as being affected thereby, including Plaintiff.

72.     The foregoing acts and omissions of Defendants affect trade and commerce as that term is defined under the UPA.

73.     The UPA defines unfair competition to include any unlawful, unfair, or fraudulent business act or practice and provides that a court may order injunctive relief and restitution to affected parties as a remedy for any violations of the UPA.

74.     Beginning on the dates indicated and at all times relevant herein, Defendants and the DOE Defendants have committed acts of unfair competition proscribed by the UPA including the acts and practices against Plaintiff alleged herein.

## ELEVENTH CAUSE OF CAUSE OF ACTION
## FRAUD UPON THE COURT

75.     Plaintiff realleges and incorporates herein by reference each and every allegation contained as though fully set forth herein.

76.     Defendants, and each of them, have filed documents Defendants knew or reasonably should have known contains fraudulent information with the court and/or with the Alameda County Recorder's Office.   Defendants appear at bar with unclean hands and documents they reasonably know to be fraudulent and defective on their face.

1

2

### TWELFTH CAUSE OF ACTION
### VIOLATION OF RESPA (12 U.S.C. 2605).

3

4

77.     Plaintiff realleges and incorporates herein by reference each and every allegation contained herein as though fully set forth herein.

5

6

78.     Defendants failed to notify Plaintiff of her rights under RESPA and violating her rights in doing so.  Furthermore, no Defendant has lawful standing to foreclose upon Marks.  Defendants conspired to effect the wrongful foreclosure and eviction and based upon fraudulent documents have violated RESPA.

7

8

9

10

### THIRTEENTH CAUSE OF ACTION
### CONSTRUCTIVE FRAUD

79.     Plaintiff re-alleges and incorporates by reference all proceeding paragraphs as though fully set forth herein.

11

12

13

14

80.     Defendants and their acts resulted in certain Defendants publically posted a "3 Day Notice to Quit" on Plaintiff's door where no Landlord/Tenant relationship exists.  The public at large driving by walking by her home could see this unlawful notice posted on her door.  Furthermore the 3 day notice to quit is defective on its face.  Defendants have filed a frivolous unlawful detainer complaint and failed to serve it on Plaintiff as of the date of the filing of this Complaint.  This act was malicious as Defendant is fully aware Defendant has no lawful right to title, no perfected title, no lawful ownership, no right occupy or right of any kind to Plaintiff's property.

15

16

17

18

19

20

21

22

23

24

81.     Defendants and each of them filed and/or recorded documents they knew or reasonably should have known to be false and fraudulent.  These acts resulted in the unlawful theft of Marks home.  Marks and her family continue to suffer manifest injustice as a direct and proximate result of the malicious acts of Defendants and each of them.

25

### FOURTEENTH CAUSE OF ACTION
### FRAUDULENT INDUCEMENT

26

27

82.     Plaintiff re-alleges and incorporates by reference all proceeding paragraphs as though fully set forth herein.

28

AMENDED VERIFIED COMPLAINT FOR DAMAGES

83.    Defendants, and each of them, as a direct and proximate result of their unlawful acts, had resulted in certain Defendants unlawfully surveiling her home and trespassing upon her property while she attempted to live peaceable with her disabled son.   Harassment can also include intentionally exposing you to materials which the harasser knows, or has reason to know, are culturally offensive or intimidating to you.  Plaintiff has lived at her home for 13 years.  Shortly after Defendants were made aware they had no standing to move against her, young men – one black one white would sit outside Plaintiff's home in an attempt to intimidate her. Plaintiff called the police on these occasions.

84.    Defendants are guilty of malice, fraud and oppression as defined in California Civil Code Section 3294, and Defendant's actions were malicious and done willfully with conscious disregard for the rights and safety of Plaintiff and her family.   The acts of Defendants as alleged herein were calculated to damage and financially ruin Plaintiff and her family.   As such, Plaintiff is entitled to recover, in addition to actual damages, punitive damages to punish Defendants and to deter future misconduct.

85.    It is not necessary that the harasser intend for the conduct to produce feelings of fear or intimidation in the victim, only that the harasser has reason to know that the conduct would cause such feelings.  Filing and recording false documents, committing trespass and harassing Marks is the direct and proximate result of the unlawful acts of Defendants in these matters.

86.    The Harassment Act 1997 protects Plaintiff against a range of unwanted behaviour, such as someone following Plaintiff, hanging around outside Plaintiff's home or workplace, repeatedly phoning, texting or writing to Plaintiff, or coming onto Plaintiff's property. The Harassment Act protects Plaintiff when the harasser is a stranger or someone else you're not in a family or other domestic relationship with.   As such, Plaintiff seeks to restrain Defendants from all acts against Plaintiff, her family and her primary residence in violation of law.  Defendants, and each of them in concert, their unlawful acts resulted in great harm to Marks and her family.

AMENDED VERIFIED COMPLAINT FOR DAMAGES

87.     In the Declaration of Trenor Askew he attempts to posture to the court that he is expending money on Marks property this is not true.  He does NOTHING to maintain the property he DI NOT pay taxes on the property until AFTER Marks notified the Court of these matters.  Based upon fraudulent documents presented to the Alameda County Recorder's office, Defendants paid Marks taxes and her property tax payment was refunded to her.  It was as if Defendants were leaning the law from Marks pleadings.  Defendants may be damaging the property to force Marks to make improvement to which they hope to unlawfully benefit.  Marks is the sole, lawful owner of her property, not Defendants.

88.     Furthermore Defendants have further damaged the Subject Property by performing major repairs without an Inspection by the City of Oakland before and after the work was done.  The work was performed by undocumented workers and no licensed contractor conducted the alleged "repairs" or "remodeling".  Marks continues to suffer manifest injustice in these matters.

### FIFTEENTH CAUSE OF ACTION
### VIOLATION OF CALIFORNIA CIVIL CODE SECTION 2932.5

89.     Plaintiff re-alleges and incorporates by reference all proceeding paragraphs as though fully set forth herein.

90.     Where a power to sell real property is given to a mortgagee, or other entity whom has placed an encumbrance on title, an instruments intended to secure the payment of money, the power is part of the security and vests in any person by whom lawful assignment becomes entitled to payment of the money secured by the instrument.  The power of sale may be exercised by the assignee if the assignment is lawfully assigned, acknowledged and recorded.

91.     The foreclosing entity simply went to the Alameda County Recorder's office, pulled Marks note.  The foreclosing entity forged assignments, unlawfully recorded the forged documents and conducted an unlawful foreclosure sale.

92.     Defendants obtained the Deed of Trust based on fraudulently recorded

1  documents. Instead of obtaining their monies from the foreclosing entity, Defendants

2  unlawfully harass plaintiff.

3       93.    Furthermore as purported real estate investors in the business of flipping

4  properties, in this foreclosure climate, it is clear on the documents recorded in the Alameda

5  County Recorder's office that there is NO lawful assignment from New Century (the loan

6  originator) to any entity prior to 2008. Furthermore, the current New Century liquidating

7  Trustee states that the obligation has been satisfied. As such, Defendants here have and

8  continue to enforce a worthless document, and operate with fill knowledge that the documents

9  are fraudulent and defective. No Defendants had standing to conduct foreclosure proceedings.

10  Marks and her family continue to suffer manifest injustice in these matters.

11

12  **SIXTEENTH CAUSE OF ACTION**<br>**UNCONCIONABILITY**

13       94.    Plaintiff re-alleges and incorporates by reference all proceeding paragraphs as

14  though fully set forth herein.

15       95.    If the court, as a matter of law, finds the contract or any clause of the contract to

16  have been unconscionable at the time it was made, the Court may refuse to enforce the

17  contract, there the worthless, invalid and fraudulent Deed of Trust in the possession of

18  Defendants.

19       96.    When it is claimed or appears to the Court that the contract or any clause thereof

20  may be unconscionable the parties shall be afforded a reasonably opportunity to present

21  evidence as to its commercial setting, purpose and effect to aid the court in making the

22  determination.

23       97.    Marks has been litigating these matters for six years. Defendants and each of

24  them, working in concert created fraudulent documents to effect an unlawful trustee's sale and

25  render Plaintiff and her family homeless. Marks sought nothing but justice in courts of law and

26  received no due process, no impartiality or fair rulings in these matters. *See, United States v.*

27  *Detroit Timber & Lumber Co.*, 200 U. S. 321, 337. The Fair Debt Collection Practices Act

28

1  (FDCPA), 15 U. S. C. §1692 et seq., imposes civil liability on "debt collector[s]" for certain

2  prohibiteddebt collection practices. A debt collector who "fails to comply with any [FDCPA]

3  provision . . . with respect to any person is liable to such person" for "actual damage[s]," costs,

4  "a reasonable attorney's fee as determined by the court," and statutory "additional damages."

5  §1692k(a). In addition, violations of the FDCPA are deemed unfair or deceptive acts or

6  practices under the Federal Trade Commission Act(FTC Act), §41 et seq., which is enforced by

7  the Federal Trade Com-mission (FTC). See §1692l. A debt collector who acts with "actual

8  knowledge or knowledge fairly implied on the basis of objective circumstances that such act is

9  [prohibited under the FDCPA]" is subjectto civil penalties enforced by the FTC. §

10       98.    Here, based upon the lack of lawful recorded documents, the fact that the note

11  has been paid in full, and the Trust Deed is based on documents which were unlawfully and

12  fraudulently recorded, lack of adherence to regulations, civil codes, federal standard and due

13  diligence that Defendants erroneously failed to reasonably investigate prior to  making a

14  purchase at the erroneousTrustee Sale Defendants here attempt to circumvent the law, harass

15  Plaintiff to become unjustly enriched and steal her home.  See Exhibit F attached hereto.

16

17                    **SEVENTEENTH CAUSE OF ACTION**
                              **QUIET TITLE**

18       99.    Plaintiff realleges and incorporates herein by reference each and every

19  allegation contained herein as though fully set forth herein.

20       100.   Only the "Note Holder" can exercise the power of sale under the deed of trust

21  pertaining to the Property.  Defendant New Century has claimed to be the Note Holder and

22  claims the Note was satisfied in 2007.

23       101.   Likewise, the "Note Holder", i.e. Defendants, as the "Lender" must give the

24  required notices pursuant to California Civil Code § 2924.  Failure of the actual "Note Holder"

25  to give the required notices makes the non-judicial foreclosure proceedings defective and void.

26  As Marks Note of satisfied in 2007 there is no Note Holder who has valid claim to foreclose in

27  these matters.

28

102.   Plaintiff sues Defendants to quiet title and to obtain the original note under rules of evidence sufficient to permit a legal determination of rightful title and to discover if the instrument was transferred by assignment or by payment and negotiation, (Owner of an instrument in question is a necessary party in order for court to cancel it. *Lawrence v. Long Beach Pleasure Pier Co., (1919) 44 Cal. App. 410, 186 P. 606).*

103.   As a result of the aforesaid defects in the non-judicial foreclosure proceedings, including the failure to give the required notices under C.C. §2924, the trustee's deed represents a cloud on Plaintiff's title to the property adverse to Plaintiff's interest which requires a determination by this Court as to which person or entity is the legal owner of the Property.

104.   A written instrument that purports to be a Trustee's Deed upon sale is presently in existence and in Defendant's control.  The Trustee's Deed upon Sale is void as it was obtained based on fraudulent recorded documents and sold to other  Defendants by an entity having no lawful right to do so.

105.   Plaintiff suffers manifest injustice at the hands of these Defendants in the form of harassment and their postering to enforce documents they knew or reasonably should have known prior to purchase at the unlawful trustee's sale, to be fraudulent or in the very least questionable as litigation regarding the property has been ongoing since 2006 and there is a lis pendens recorded which is not expunged.  As NO Defendants have perfected title, unlawful detainer action is was NOT the proper venue to clear title.  Here Defendants are entitled to nothing from Plaintiff, and not entitled to Possession of the subject property.

106.   Plaintiff also properly brought to bar that the State Court had no subject matter jurisdiction to award Marks home.  The limitations of that court is $25,000.00.  If ownership is NOT clear, possession could not be granted or adjudicated prior to the determination of the allegations of fraud properly alleged by Marks.

107.   Plaintiff Marks has been irreparably harmed and financially devastated by the acts of these Defendants, and each of them.  Marks disabled son has to struggle to understand

1   why he is no longer in his home of 13 years and now sleeping in a room in a strange

2   environment. Marks has suffered financial devastation, Marks credit report has been crippled

3   by the fraudulent credit reportings of Defendants to which Marks has never had any obligation.

4   The Loan upon which the foreclosure is based is not a loan to which Marks has ever had any

5   obligation.  Marks demands justice for these inexcusable acts of lawlessness perpetrated by

6   Defendants.

7                                        **PRAYER**

8          WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them as

9   follows:

10         1.      For immediate CEASE AND DESIST ORDER enjoining all Defendants, and

11  each of them, their agents, servants, heirs, dba's, fka's, corporate affiliates, subsidiaries,

12  employees, and all persons or entities acting under, in concert with, on their behalf in any

13  capacity from selling or conveying or attempting to sell or convey any interest whatsoever that

14  Plaintiff may have in the real property commonly known as 3099 Suter Street, Oakland,

15  California.

16         2.      For immediate CEASE AND DESIST ORDER enjoining all Defendants, and

17  each of them, their agents, servants, heirs, dba's, fka's, corporate affiliates, subsidiaries,

18  employees, and all persons or entities acting under, in concert with, on their behalf in any

19  capacity from performing any further unpermitted construction on the Subject Property

20  commonly known as 3099 Suter Street, Oakland, California.

21         3.      For immediate preliminary injunction enjoining all Defendants, and each of

22  them, their agents, servants, heirs, dba's, fka's, corporate affiliates, subsidiaries, employees,

23  and all persons or entities acting under, in concert with, on their behalf in any capacity from

24  selling or conveying or attempting to sell or convey any interest whatsoever that Plaintiff may

25  have in the real property commonly known as 3099 Suter Street, Oakland, California; and

26         4.      That Plaintiff's credit standing be fully restored in relating to;

27         5.      Immediate right of possession of the Property Commonly known as 3099 Suter

28

1   Street, Oakland, California be granted and restored to Plaintiff;

2       6.      Title to the property commonly known as 3099 Suter Street, Oakland,

3   California, be restored to Plaintiff in the name of "Leslie Patrice Barnes Marks"  a single

4   woman, with no encumbrance, obligation or debt to any Defendants according to proof;

5       7.      Monetary damages awarded in the amount of $75,000,000.00;

6         (a) Declare the Payments to be avoidable preferences and award judgment
      against the Defendants and each of them in the amount indicated;

7

8       (b) Award pre-judgment and post-judgment interest;

9       (c) Quiet Title ; and

10      (d) Grant such other and further relief to the Plaintiff as may be just and proper.

11

12  DATED: September 30, 2011

13              Plaintiff Leslie Marks, Plaintiff in Pro Per

14              3099 Suter Street
            Oakland, CA  94602

15              Tel:  510.393.3893
            Fax: 866.814.8313

16

17

18

19

20

21

22

23

24

25

26

27

28

AMENDED VERIFIED COMPLAINT FOR DAMAGES

1

## **<u>VERIFICATION</u>**

2

3    I, LESLIE MARKS, am the plaintiff in the above entitled proceeding.  I have read and

4    drafted the Complaint attached hereto, in the above-entitled action and know the contents

5    thereof.  The same is true of my knowledge except to those matters which are therein stated on

6    information and belief, and as to those matters, I believe it to be true.

7        I declare under penalty of perjury under the laws of the state of California that the

8    foregoing is true and correct.  Executed on this 30th day of September, 2011 at Oakland,

9    California.

10

11                                 _____

12                                 Leslie Patrice Barnes Marks

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMENDED VERIFIED COMPLAINT FOR DAMAGES